## NELSON v. NELSON.

No. 26077. Nov. 26, 1935.

Rehearing Denied Dec. 17, 1935.

Hatcher & Bond, for plaintiff in error.

Bailey & Hammerly, for defendant in error.

PER CURIAM. This action was commenced in the district court of Grady county, Okla., by the defendant in error, Leola D. Nelson, against the plaintiff in error, N. L. Nelson. The parties will be referred to as they appeared in the trial court.

The plaintiff, Leola D. Nelson, filed a separate maintenance suit against her husband, N. L. Nelson, on August 5, 1933; the defendant, N. L. Nelson, filed answer and cross-petition, seeking absolute decree of divorce and equitable division of the property acquired during the marriage relationship of the plaintiff and defendant. The plaintiff filed an answer to defendant's cross-petition, asking that defendant's prayer for a divorce be denied, but that in the event the court should find that the marriage relationship should be dissolved, she be granted a decree of divorce from the defendant, setting up for her grounds therefor extreme cruelty and gross neglect of duty.

This cause came on for trial on September 13, 1934, and at the conclusion of the evidence judgment and decree was rendered, granting unto the plaintiff a decree of divorce on the grounds of gross neglect of duty and extreme cruelty, and further dividing the property of said plaintiff and said defendant between them, and further decreeing that said defendant should pay certain bills of said plaintiff, and that he should further pay to said plaintiff the sum of $1,000, to be paid in monthly installments of $50 each.

Thereafter, said defendant filed his motion for a new trial asking that said judgment be vacated in so far as the division of property was concerned for the reason that said division of the property was inequitable, unfair, and unconscionable, and contrary to law and equity. Thereafter, said motion for new trial was overruled and said defendant has completed his appeal to this court, not for the purpose of reversing the decree of divorce, but said appeal being directed strictly to the cause of action involving the division of property belonging to the parties herein.

For the purpose of discussing this appeal, it is necessary that we briefly review the evidence submitted in the trial of this cause. The plaintiff testified that she was the wife of the defendant, Dr. N. L. Nelson; that she and the doctor were married in Ottumwa, Iowa, in June, 1911; that at the time of their marriage, Dr. Nelson was working in a grocery store; that prior to their marriage she had been teaching school and he had been working in a grocery store; that after their marriage they continued to live in Ottumwa and the doctor continued in the grocery business until April, 1919; that the grocery business was unsuccessful, and at that time it was closed up; that thereafter the doctor entered the school of osteopathy in the fall of 1920 at Kirksville, Mo.; that she stayed at Ottumwa and taught school; that from the time of their marriage and during the entire time they resided in Ottumwa, she did substitute work teaching school, and that she taught school during the four years the defendant attended the school of osteopathy; that she started at $1.50 per day and it was increased until she was getting $5 per day and the work increased until she was teaching practically all of the time; that, in the three years she taught steadily while the doctor was in school, she got about $1,250 to $1,300 per year, and that she furnished the largest part of the support of the doctor while he was attending the school of osteopathy for four years; that she used her money for the upkeep and improvement of their home in Ottumwa; that the doctor owned the home prior to their marriage; that the home was disposed of four years after they moved to Chickasha for $3,000; that the doctor gave her $2,000 of the sale price which she had in a savings account in the Citizens Farmers National Bank of Chickasha, and that he also gave her a $1,000 first mortgage on the house at the time it was sold, which she still held.

She further testified that up to 1926 the doctor gave her money occasionally as he had it, because he was just getting started to practice his profession, and that from the years 1926 until May, 1932, he gave her $100 per month, with which to buy groceries, clothing, and pay the household expenses. She further testified that she had saved about 25 per cent. of this allowance which she had put in a savings account. She testified that in May, 1932, Dr. Nelson checked $3,000 out of their joint account in cash, giving her $1,000 and keeping $2,000; that he left town at that time without any explanation and was gone for 13 weeks. She further testified that the doctor had two automobiles, an Oakland coupe and a Buick sedan; that several days before she filed her petition in this case, the doctor drew $2,500 from their joint bank account and gave the plaintiff none of it. She further testified that she owned a 50-foot lot in Chickasha worth less than $200. She further testified that there was a joint account of $3,600 in

the First National Bank of Chickasha, which bank was in the process of liquidation. There was considerable evidence with reference to her $2,200 savings account and a $1,000 deposit which she had in the First National Bank at Chickasha, but both of these deposits represented gifts to her and were her own personal savings and property, and in our opinion constituted her separate property.

Dr. Nelson, the defendant in this case, testified that he checked out the $2,500 just before the plaintiff filed this suit, but refused to account for it. He further testified that out of the household furniture, all he wanted was a musical instrument, an old chair, and a tool kit, and that he would also like to have the life insurance policy. He further testified that he had $6,000 or $7,000 worth of accounts receivable, but valued them at only $1,000.

The court in its decree of divorce, after finding that the defendant had been guilty of gross neglect of duty and conduct amounting to extreme cruelty and that the plaintiff was entitled to a decree of divorce, and further finding that subsequent to the marriage of the plaintiff and defendant, the defendant was assisted through a school of osteopathy by the plaintiff, and that the defendant was at the time of the decree of divorce an able-bodied man possessed of professional ability and capable of substantial earnings, makes the following finding with reference to the distribution of the property:

"The court further finds that the following property should be decreed to the plaintiff as her sole and exclusive property: Approximately $2,200 on deposit in the Citizens-Farmers National Bank in Chickasha, Okla., in the name of said plaintiff; moneys in the First National Bank of Chickasha, approximately $3,600 to the joint account of plaintiff and defendant, and $1,000 in the name of the plaintiff; approximately $150 in the Bank at Ottumwa, Iowa; mortgage in the sum of $1,000 held on former home in Ottumwa, Iowa; $300 in government bonds; all household and kitchen furniture in the apartment used and occupied by the plaintiff and the defendant; one Oakland coupe automobile; one lot in Chickasha, Okla., described as follows: North 50 feet lot four (4), block fourteen (14), Scott Jones addition to the city of Chickasha, Okla., and oil and gas royalty described as follows: 1/32 interest in gas, oil and other minerals in and under S. ½ S. W. ¼ N. W. ¼ and N. ½ S. W. ¼ section 36, twp. 5 N., range 7 west, Grady county, Okla.

"The court further finds that the defendant should pay accumulated rents and household bills as follows: Laundry $35.86; rents $50; bill at Dixie Store, $86; dental bills, Dr. Crose, $36; Chickasha Ice Company, $12.53; Gilbert Tire & Service Co., $17.69; Peoples Store, $2.09; Grand Service Station, $25.75; Brownson's Drug Store, $7.70; C. O. D. Market $6. And in addition thereto that the said defendant should pay to the said plaintiff the sum of $1,000, to be paid in installments of $50 each, beginning on the first day of October, 1934, and payable a like amount on the like day of each month thereafter until paid in full.

"The court further finds that the defendant, N. L. Nelson, should retain such moneys and accounts as he may have outside of those hereinabove named; insurance policy in the New York Life Insurance Company; Buick automobile; office furniture and fixtures; all personal belongings including family pictures, one Morris rocker, an electric heater, and his personal books, tool trunks, tool chest, etc.

"The court further finds that the defendant should pay all costs of this action and pay to the plaintiff's attorneys the sum of $100."

We have carefully considered the evidence in this case and the authorities cited by plaintiff in error, but, in our opinion, the facts in this case are distinguishable from the authorities quoted therein.

In the case of Gray v. Gray, 89 Okla. 237, 215 P. 208, this court quotes with approval from the case of Galutia v. Galutia, 72 Kan. 70, 82 P. 461, as follows:

" 'There are many circumstances which properly enter into the mind of the court when making such an award, such as the financial ability of the parties, how the property was accumulated, the conduct of the parties, their station in life,' etc."

This court held in this same case that the statute providing for an equitable division of jointly acquired property did not contemplate an equal division of the property, and held that where there is sufficient evidence to support the findings of the lower court and the decree based thereon, the same will not be disturbed (St. 1931, sec. 672).

In the case at bar, if you segregate the property already belonging to the plaintiff as her separate property, and consider the division made by the court with reference to the remainder thereof which constituted the joint property of plaintiff and defendant, it seems to us that there has been an equitable division of said property, especially in view of the fact that the defendant, from his own evidence, drew $2,500 out of the Oklahoma National Bank when he learned that the plaintiff was going to file a separate main-

tenance suit and refused to account for same, testified that he had sent it out of the state and refused to divulge any details with regard to same, and further considering the fact that the plaintiff in this case furnished the money from her own personal earnings for the support of the defendant during the period when he was learning his profession, which, from all the evidence, seems to have proven a most lucrative one.

This court will not reverse the decree of the trial court dividing jointly acquired property, unless same is contrary to the clear weight of evidence. It is, therefore, the judgment of this court that there being no reversible error in the record, the judgment of the district court should be and the same is hereby affirmed.

The Supreme Court acknowledges the aid of Attorneys H. L. Douglas, Tom W. Garrett, and Fred E. Suits in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Douglas and approved by Mr. Garrett and Mr. Suits, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur.